**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LIFE PLANS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | 11 C 8449 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| SECURITY LIFE OF DENVER ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Life Plans Inc. ("LPI") sued Security Life of Denver Insurance Company ("SLD") for breach of contract and breach of the covenant of good faith and fair dealing. SLD moves for summary judgment on both claims while LPI moves for summary judgment as to the breach of contract count. For the reasons stated herein, SLD's motion is granted and LPI's motion is denied.

**Facts**

LPI is an Illinois corporation and licensed insurance agent that was formed in 1999 and is 100% owned by its President, Pamela Simon, and officers and employees. (Pl.'s Resp. Def.'s Stmt. Fact, Dkt. # 66, ¶ 1.) SLD is an insurance company providing life and health insurance, is wholly-owned by ING U.S., Inc., and sells retail life insurance in the United States. (*Id*. ¶ 3.)

This lawsuit is based on written agreements between LPI and SLD concerning a life insurance policy known as ING UL-ECV-Peak ("Peak"). (*Id*. ¶ 7.) On December 2, 2010, SLD held an internal "kick-off" meeting to begin development of Peak. (*Id*. ¶ 17.) The background and details of the policy and its structure are complex and need not be discussed in detail. The parties agree that while the Peak insurance product was being developed, they engaged in negotiations and ultimately executed the Joint Cooperation Agreement ("JCA") on June 7, 2011. (*Id*. ¶ 59.) Put simply, the JCA governed the parties' agreement by which LPI would market the Peak policies issued by SLD. (*Id*. ¶ 58.) The sales of the Peak policies were to be funded through LPI's Arbitrage Life Payment System ("ALPS"). (*Id*. ¶ 7.)

When, according to SLD, development and financing of the Peak policy did not go as planned, it sent a letter terminating the JCA on October 17, 2011. (*Id*. ¶ 68.) LPI filed suit against SLD for breach of contract and breach of the implied covenant of good faith and fair dealing. Additional facts will be discussed in the Analysis section of the order as necessary.

**Analysis**

A.  Breach of Contract

LPI alleges that SLD breached the JCA by failing and refusing to: (1) underwrite Peak policy applications submitted to it; (2) accept premiums for Peak policies commencing as of July 1, 2011; (3) issue Peak policies; and (4) pay commissions due LPI. (Compl., Dkt. # 1-1, ¶ 36.) LPI seeks damages of over $19.8 million. (*Id*. ¶ 36.)

1.  *Termination Provision*

SLD contends that it did not breach the JCA because it properly terminated the contract. Section 8(i) of the JCA states in relevant part that:

> Termination. This Joint Cooperation Agreement will continue indefinitely, until terminated by either party upon thirty (30) days written notice, delivered by certified mail. Company will complete processing of all applications received prior to notice of termination.

(*Id*. ¶ 65.) On October 17, 2011, Gary Jenkins, Deputy General Counsel for ING Insurance US, sent a letter dated October 17, 2011, to Pam Simon of LPI stating that "[p]ursuant to Paragraph 8(i) of the Agreement, notice is hereby given that the Agreement is terminated." (*Id*. ¶ 68.)

PLI contends that the termination is not effective because SLD did not serve notice by certified mail. In her affidavit, Eileen Mroz attests that as the Executive Assistant to Jenkins, she sent the termination letter on October 17, 2011. According to Mroz, she "prepared a certified envelope with return receipt requested using the certified mail label and receipt provided by the United States Postal Service," but she "caused the same to be delivered to Pamela Simon through UPS." (Def.'s Supp. Ex. # 10, Mroz Aff., ¶ 5.) Thus, while Mroz included certified mail receipts with the mailing, she actually sent it via United Parcel Service ("UPS").

While SLD did not strictly comply with the termination notice provision, "[w]hen confronted with less than literal compliance with a notice provision, courts have required that a party substantially comply with the notice provision." *Kelly v. Blum*, No. 4516-VCP, 2010 WL 629850, at *8 n.52 (Del. Ch. Feb. 24, 2010) (internal quotation marks and citations omitted).[1] "To hold otherwise would exalt form over substance and produce an unnecessarily harsh result where the purpose of [the notice provision] clearly has been met." *Id*. at *8 (while agreement stated that confirmation copy should be sent by first class mail, the plaintiff's transmission of the confirmation by overnight commercial delivery service constituted substantial compliance with the Agreement). LPI does not state that it did not receive the letter. Indeed, someone from LPI sent back the signed certified mail card to Mroz indicating receipt of the letter. (Def.'s Supp. Ex. # 10, Mroz Aff., ¶ 5; *id*., Ex. B.) Finding that SLD failed to comply would undermine the

---

[1] The parties agree that Delaware law applies pursuant to § 8(f) of the JCA.

purpose of the notice provision. *Kelly*, 2010 WL 629850, at *8 n.52 ("[S]end[ing] a confirmation copy by overnight courier substantially complied with the purpose (and essential benefit) of allowing notice by confirmed fax: Timely receipt of the notice.").

This approach is particularly apt in this case since under § 8 of the JCA, which is entitled "Administrative Provisions" and includes the termination provision at issue, the first subsection entitled "Notices" states that "*[a]ny* notice or communication required or permitted hereunder [which includes the termination notice] shall be sufficient if given in writing, personally delivered, sent by a national recognized overnight carrier, sent by certified mail postage prepaid, or sent by facsimile transmission with a receipt confirmed" and addressed as indicated. (JCA, Def.'s Ex. 68, § 8.a.) (emphasis added.) While it is true that the termination provision calls for delivery by certified mail, the parties clearly contemplated delivery of notices by other means, including UPS.

PLI also argues that SLD did not have the absolute right to terminate because the termination provision is subject to § 1.a. of the JCA, which states:

> The Company agrees to accept at least $100,000,000 of premium per twelve month period, excluding reallocations and client payments from July 1, 2011 until July 30, 2014; provided however, that the Company may in its sole discretion accept premium in excess of $100,000,000 in any such period.

(JCA, Def.'s Ex. 68, § 1.a.) PLI asserts that to find that SLD could terminate the JCA without fulfilling this provision would render it illusory. From that perspective, any termination provision would render illusory the other contractual obligations in any contract. Indeed, if the Court held that SLD were bound by § 1.a. despite the plain language in the termination provision, then the termination provision itself would be rendered illusory. If PLI wanted SLD's termination ability to be contingent upon its first accepting at least $100,000,000.00 of premium, it could have expressly placed that limitation in the termination provision. It did not.

PLI also argues that SLD's position that it had the absolute right to terminate is at odds with the parties' intention that the contract have an initial term of at least three years. Specifically, it asserts that the language of the termination provision stating that the JCA "will continue indefinitely," actually means that it will continue after the three-year $300 million commitments have been performed, and that the ability to terminate was thus contingent on the passage of the three-year/$300 million threshold. But, the express language of the termination provision contains no such qualification. Moreover, LPI's resort to the parties' intention as evidenced by a September 7, 2011 e-mail from an ING senior executive who stated to Scott Carney, Head of Life Product Management at LPI, that "[o]ur expectation is to write $300 million of single premium . . . over three years," (Pl.'s Stmt. Fact, Dkt. # 67, ¶ 42), is inapposite. The language of the termination provision is to be given its plain meaning and the Court need not resort to extrinsic evidence to interpret it. *Future Fibre Techs., Pty. Ltd. v. Optellios, Inc*., No. 09-346, 2011 WL 3563341, at *4 (D. De. Aug. 15, 2011) ("Delaware courts have held that

extrinsic evidence is not to be used to interpret contract language where that language is plain and clear on its face.") (citation omitted).

The Court notes that while LPI's proposed draft of the JCA stated that "[t]he terms of this Agreement shall be for an indefinite period, but shall not be terminated prior to the fulfillment of [SLD's] $300 million A.L.P.S. premium commitment," this is not the language that was included in the signed version of the JCA. Instead, the final version states that the JCA can be terminated by either party with thirty days written notice and further provides that the "Company will complete processing of all application received prior to notice of termination." The deletion of the language initially proposed by LPI from the final version dictates against reading the termination provision as contingent on payment of the $300 million in premium commitments.

LPI also contends that SLD did not properly terminate the JCA because it did not "complete processing of all applications received prior to notice of termination" as required by the termination provision. In other words, LPI contends that processing the applications was a condition precedent to SLD's ability to terminate. Under Delaware law:

> Express language in a contract that qualifies a promise to perform upon the happening of a stated event creates what is known as a condition precedent. A condition precedent is an event that, although not certain to occur, must occur before performance under a contract becomes due. Courts interpret language such as "if," "as soon as," or "provided that" as the express creation of a condition.

*Munro v. Beazer Home Corp.*, No. U608-03-081, 2011 WL 2651910, at *5 (Del. Com. Pl. June 23, 2011). Section 8(i)'s language does not contemplate that SLD had to complete processing of all applications prior to giving notice. Indeed, such a reading would effectively mean that SLD could never terminate the contract because it would not be able to stop the flow of applications prior to giving notice. Thus, processing of the applications was not a condition precedent to SLD's terminating the contract.[2]

LPI's additional assertion that SLD waived its right to terminate when it purportedly breached the JCA by not processing the applications it had received is also unavailing. LPI's citation to *Jackson v. Castoran*, No. CIV A. 7334, 1987 WL 758006, at *4 (Del. Ch. Oct. 29, 1987) is unpersuasive. In that case, the court concluded that because the plaintiff had repudiated the partnership at issue, the partnership was dissolved in contravention of the partnership agreement and the plaintiff had waived any rights he had to the distribution of partnership assets as provided for in the amended termination provision. *Id*. at **3-4. Indeed, in *Jackson*, the plaintiff did not terminate pursuant to the termination provision in the agreement. *Id*. at *3.

---

[2] Whether or not LPI has an independent breach of contract claim against SLD solely for an alleged failure to complete processing of "all applications received prior to notice of termination" is not discussed by the parties.

Here, however, notice of termination was provided pursuant to the express terms of the JCA and there is no evidence that SLD repudiated the contract.

        B.      Implied Covenant of Good Faith and Fair Dealing

In its count alleging breach of the implied covenant of good faith and fair dealing, LPI states that "by terminating the JCA, SLD exercised its discretion in a manner inconsistent with and in violation of the implied covenant of good faith and fair dealing." (Compl., Dkt. # 1-1, ¶ 42.)

Under Delaware law, a duty of good faith and fair dealing is implied in every contract. *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007). The implied covenant prohibits a party to a contract from acting arbitrarily or unreasonably to prevent the other party from receiving the fruits of the contract. *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). However, "the presence of an express term that governs the subject of the parties' dispute means that the implied covenant can have no bearing on the case." *Forsythe v. Black Hills Corp.*, No. 04 C 5361, 2008 WL 373177, at *12 (N.D. Ill. Feb. 8, 2008) (applying Delaware law). "Indeed, the premise of any claim for breach of an implied covenant of good faith and fair dealing is that the parties failed to negotiate with respect to the matter in issue." *Dow Chem. Can. Inc. v. HRD Corp.*, 656 F. Supp. 2d 427, 445 (D. Del. 2009) (citation, internal quotation marks and alterations omitted). The implied covenant should not be used to give plaintiffs "contractual protections that they failed to secure for themselves at the bargaining table." *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 707 (Del. Ch. 2004).

As discussed above, the termination provision is clear and plainly provided for in the JCA. Therefore, this Court has no basis on which to imply any terms with respect to termination. This ground for relief is denied.

**Conclusion**

For the reasons stated above, SLD's motion for summary judgment [52-1] is granted and LPI's motion for summary judgment [63-1] is denied. All other pending motions are denied as moot. Civil case terminated.

**Date**: August 12, 2013

                                            **United States District Judge**
                                            **Ronald A. Guzmán**