UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFE PLANS, INC., | ) |
| | ) Case No. 11 C 8449 |
| Plaintiff, | ) |
| | ) District Judge Ronald A. Guzmán |
| v. | ) |
| | ) Magistrate Judge Geraldine Soat Brown |
| SECURITY LIFE OF DENVER | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court are plaintiff's objections [dkt 91] to defendant's bill of costs [dkt 83], which seeks a total of $117.130.66, most of which consists of expenses associated with production of electronically stored information. For the following reasons, plaintiff's objections are sustained in part and overruled in part. Defendant may recover $34,876.50.

### Background

Plaintiff Life Plans, Inc. ("Life Plans") sued defendant Security Life of Denver Insurance Company ("Security") for breach of contract and of a covenant of good faith and fair dealing. (Not. Rem., Ex. A. ¶¶ 34-43.) [Dkt 1.] The District Judge granted Security's motion for summary judgment and denied Life Plans's cross-motion for summary judgment. (Order, Aug. 12, 2013.) [Dkt 81.] Judgment was entered that same day. [Dkt 82.] Life Plans moved for reconsideration

1

under Fed. R. Civ. P. 59(e), but its request was denied. (Order, Jan. 29, 2014.) [Dkt 95.][1]

As the prevailing party, Security filed a bill of costs pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1), requesting $117,130.66. (Def.'s Bill of Costs at 1.) The Bill of Costs is broken into four sections. Schedule A lists $350 for filing fees. (*Id.* at 3.) Schedule B asks for $125 for process server fees for sending two subpoenas. (*Id.*) Schedule C itemizes charges for 34 deposition transcripts and 2 video recordings of depositions, for a total cost of $18,431.23. (*Id.* at 4-9.) Schedule D includes the bulk of the costs, seeking $98,224.43 in "[f]ees for exemplification and copies of papers necessarily obtained for use in this case." (*Id.* at 10-17.) The Schedule D costs are broken into three parts: $322.80 in copying costs for 3,228 pages of court filings; $86,299.10 for 862,991 copies created as part of document production; and $11,602.53 for optical character recognition ("OCR") of 580,393 documents. (*Id.*)[2]

Life Plans has objected to the costs for videotaping depositions in Schedule C and to all of Schedule D (Pl.'s Objections), and Security has responded to the objections (Def.'s Reply) [dkt 92]. The District Judge referred the objections to this court. [Dkt 96.] As discussed further below, this court then directed Security to supplement its Bill of Costs by submitting invoices in support of the costs requested in Schedule D. (Order, Mar. 5, 2014.) [Dkt 106.] Along with submitting those invoices, Security also filed a more detailed breakdown of its costs for document production. (Def.'s

---

[1] The case is currently on appeal to the Seventh Circuit (Dkt 14-1437).

[2] The Bill of Costs does not list separately the page count for court filings and discovery production; rather, it lists a total page count for both categories of 866,223. (Def.'s Bill of Costs at 17.) Life Plans, however, says the Bill of Cost itemizes 3,228 pages of court filings and 862,991 pages of document production, for a total of 866,219—four pages less than is listed in the Bill of Costs. (Pl.'s Objections at 4-5.) By this court's calculation, Life Plans is correct.

2

Add'l Bill of Costs Subm. at 3.) [Dkt 108.]

**Legal Standard**

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The costs that may be taxed under that rule are limited to those enumerated in 28 U.S.C. § 1920: (1) fees of the clerk and marshal; (2) fees for transcripts necessarily obtained for use in the case; (3) fees for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies were necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts and interpreters. Thus, "§1920 defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Recently the Supreme Court emphasized the "narrow scope of taxable costs." *Taniguchi v. Kan Pacific Saipan, Ltd.*, ___ U.S. ____, 132 S. Ct. 1997, 2006 (2012). "Taxable costs are limited to relatively minor, incidental expenses . . . . [T]axable costs are limited by statute and are modest in scope . . . ." *Id.* Whether a particular cost is within the scope of § 1920 is an issue of statutory construction and thus a question of law. *In re Ricoh Co. Patent Litig.,* 661 F.3d 1361, 1364 (Fed. Cir. 2011).

"Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*,

411 F.3d 854, 864 (7th Cir. 2005). That presumption does not, however, relieve the prevailing party of the burden of establishing that potentially recoverable costs it incurred were reasonable and necessary. *Telular Corp. v. Mentor Graphics Corp.*, No. 01 C 431, 2006 WL 1722375 at *1 (N.D. Ill. June 16, 2006). The district court's determination whether particular costs are reasonable and necessary is given considerable deference. *SK Hand Tool Corp. v. Dresser Industries, Inc.*, 852 F.2d 936, 943 (7th Cir. 1998).

**Discussion**

Costs for Video Recordings of Depositions

Security seeks to recover $1,092.50 in costs for videotaping two of the 34 depositions listed in the Bill of Costs. (Def.'s Bill Costs at 4.) "A prevailing party can recover costs for both a video-recording and a transcript of the same deposition, provided that the party can show both are necessary and reasonable in the context of the case." *Trading Techs. Intl. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 976 (N.D. Ill. 2010); *see also Little v. Mitsubishi Motors N.A.*, 514 F.3d 699, 702 (7th Cir. 2008). Security does not argue that the video depositions were necessary for use at trial. Rather, Security contends that the "issues covered by these witnesses were central to the parties' cross-motions for summary judgment" and that "there was no certainty that either witness would appear for trial" because both live in New York and one has left employment with Security since the time of underlying events in this case. (Def.'s Reply at 2-3.)

Security has not justified its request for videotaping costs. A similar situation arose in *Trading Technologies*, where a prevailing party sought the cost of videotaping depositions of purportedly "unavailable" witnesses residing in New York. 750 F. Supp. 2d at 976. The court noted

4

that, as here, the prevailing party had not argued that it needed the video recordings regardless of witness availability; rather, it sought to recover the costs of videotaping the depositions solely because the witness lived outside the court's subpoena power. *Id.* In rejecting the request for costs, the court explained that "the need for preserving a domestic witness's testimony by video-recording is small when [the prevailing party] has failed to provide a legitimate basis for that witness's proffered 'unavailability.'" *Id.* at 977; *see Chi. Bd. Options Exch., Inc. v. Intl. Sec. Exch., LLC*, No. 07 CV 623, 2014 WL 125937 at *4 (N.D. Ill. Jan. 14, 2014) (refusing to award costs of videotaped depositions when party "alleged no more than the mere fact that the witnesses were outside of the court's subpoena power"). Similarly, Security's assertion that there is "no certainty" that the two domestic witnesses at issue would be available for trial is not enough to justify an award of cost to cover videotaping their depositions. For that reason, Life Plans's objection to Security's costs for videotaping is sustained. Security may recover $17,338.73 for deposition transcripts — a cost to which Life Plans does not object — but not the additional cost for videotaping.

Copying Costs for Court Filings

Security also requests $322.80 to cover the cost of copying 3,228 pages of court filings at 10 cents per page.[3] (Def.'s Bill Costs at 10-15.) Life Plans argues that the request must be denied because it is unclear whether these costs were incurred in making copies solely for Security's counsel's convenience. *See McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990)

---

[3] Life Plans disputes the rate of ten cents per page in regard to document production, but does not contest that rate in regard to court filings. The rate falls within the range of 10 to 20 cents per page that is generally considered reasonable. *See Dishman v. Cleary*, 279 F.R.D. 460, 469 (N.D. Ill. 2012); *Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 982 (N.D. Ill. 2003).

(holding that costs for copies of court filings for attorney's own use is not recoverable under § 1920); *Se-Kure Controls, Inc. v. Vanguard Prod. Group, Inc.*, 873 F. Supp. 2d 939, 947 (N.D. Ill. 2012) (same). In support, Life Plans cites two decisions in which the court denied requests for copying costs when the requesting party did not list which documents were copied or why. (Pl.'s Objections at 4, citing *Teerling v. Fleetwood Motor Homes of Indiana, Inc.*, No. 99 C 5926, 2001 WL 883699 at *2 (N.D. Ill. Aug. 2, 2001); *Place v. Abbott Laboratories, Inc.*, No. 94 C 5491, 1999 WL 569580 at *4 (N.D. Ill. July 30, 1999).)

In response, Security points out that, for most of its filings, it has requested costs for only one copy—the copy it submitted electronically to the court and opposing counsel. (Def.'s Reply at 3.) It seeks costs for two copies only when it delivered hard copies of those documents to chambers and opposing counsel, which it did for five documents consisting of a total of 1,031 pages. (*Id.* at 4; Def.'s Bill of Costs at 12-15.)

Security is entitled to these requested copying costs. Awarding the cost of two copies of each court filing is consistent with what courts in this district generally allow as reasonable when electronic filing is used. *See Lewis v. City of Chicago*, No. 04 C 6050, 2012 WL 6720411 at *9 (N.D. Ill. Dec. 21, 2012) ("[A]fter electronic filing became mandatory, parties have been allowed to recover for only two copies of court filings."); *see also Kulumani v. Blue Cross Blue Shield Assn.*, 224 F.3d 681, 685 (7th Cir. 2000) ("Two copies of every document filed with the court or provided to opposing counsel makes sense; it is easy to see why each is useful."). Moreover, unlike the parties in *Teerling* and *Place*, Security has provided an itemized list of its filings showing the number of pages of each filing and has explained why it has sought fees for two copies of some of those filings. Further justification of the copying costs is not required. *See Natl. Org. for Women, Inc. v.*

6

*Scheidler*, 750 F.3d 696, 698 (7th Cir. 2014) ("Having a lawyer devote the time necessary to demonstrate the necessity of each transcript and every copy of a document would be far more costly than the copying itself."). Thus, Life Plan's objections to Security's request for $322.80 in copying costs are overruled.

Costs of Producing Electronically Stored Information

By far the largest part of Security's Bill of Costs is its request for the cost of producing documents in discovery, including electronically stored information ("ESI"). In addition to copying costs for court filings, Security seeks $86,299.10 for 862,991 pages of documents (at 10 cents per page) produced in document production to Life Plans and third parties. (Def.'s Bill of Costs at 15-16.) Security also seeks an additional $11,602.53 for OCR processing of 580,393 documents. (*Id.* at 17.)[4] Security argues that all of these costs are recoverable under § 1920(4), which allows recovery of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."

In the Bill of Costs, Security listed 34 entries regarding document production. (Def.'s Bill of Costs at 15-16.) Each entry included the date of the production, whether the pages were electronic or hard copy, the number of pages, and the number of copies. In objecting to the Bill of Costs, Life Plans argued that this information was insufficient because, based on other documents Security had submitted, Life Plans suspected that Security had inflated its actual costs. (Pl.'s Objections at 6.)

---

[4] OCR is a process "that converts an electronically stored document into a searchable text file." *Windy City Innovations, LLC v. Am. Online, Inc.*, No. 04 C 4240, 2006 WL 2224057 at *3 (N.D. Ill. July 31, 2006).

7

Further, Life Plans contended that Security's actual costs could not be confirmed because Security had not submitted invoices to support its request. (*Id.* at 5.) In reply, Security defended its requested rate of 10 cents per page but also offered to supplement its Bill of Costs with the underlying invoices. (Def.'s Reply at 5.)

This court accepted Security's offer to supplement its Bill of Costs. (Order, Mar. 5, 2014.) While a prevailing party need not produce a description of costs "so detailed as to make it impossible economically to recover photocopying costs," *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991), the invoices were needed because of the concerns about accuracy raised in Life Plans's objections and the large amount of copying costs at issue. (Order, Mar. 5, 2014.)

Security's supplement raises additional concerns because it reveals that Security has included charges under the category of "exemplification" that some courts have refused to award under § 1920(4). (Def.'s Add'l Bill of Costs Subm. at 3.) Security breaks down its costs as follows:

| **Exemplification Process** | **Total Amount** |
|---|---|
| Data loading | $183.16 |
| Data processing | $73,366.42 |
| De-duplication and culling | $44,206.00 |
| Tiff file conversion | $5,211.95 |
| Bates labeling | $8,700.02 |
| Deliverable media | $1,120.00 |
| Hard-copy document production | $1,762.00 |
| OCR | $11,602.53 |
| **Total** | **$146,152.08** |

(Def.'s Add'l Bill of Costs Subm. at 3; Def.'s Bill of Costs at 17.) Security notes that its actual costs for processing ESI "*far* exceed the $0.10 per page that [it] has sought in its Bill of Costs." (Def.'s Additional Bill of Costs Submission at 3 (emphasis in original)). It also states that it is not seeking "any costs relating to data hosting, data licensing, or technical or project management time." (*Id.* at 3 n. 2.)

Security requests 10 cents per page for each page it produced whether the production was in hard copy document production or in electronic format. Life Plan does not dispute the 10 cents per page charge for the documents produced in paper ("hard copy") format, which is in line with what courts in this district have accepted as reasonable for hard copies. *See Phillips v. Allen*, No. 07 C 666, 2011 WL 1884558 at *3 (N.D. Ill. 2011) (collecting cases).

The issue here is whether the simple amount-per-page rule of thumb that has historically been accepted for document production in hard copy format can be applied to documents produced in electronic format. Based on a review of authority, this court concludes that it cannot. Presumably, there will be cases where the amount sought is small and is not challenged, so that the common sense principle announced in *Northbrook Excess*—that a party should not spend more to recover costs than the costs themselves—will justify a simple multiplication of per page cost. But that is not the situation here where the requested amount is almost $100,000 and is challenged by the other party.

The parties in this case anticipated that e-discovery would be necessary and designated the format for such production, but did not deal at the outset with the costs that would be involved. In January 2012, less than two months after this lawsuit was filed, the parties submitted a "discovery plan and initial status report" discussing, in part, the results of their conference required by Fed. R.

Civ. P. 26(f). [Dkt 14.] That filing shows that the parties agreed to produce electronically stored information ("ESI") "in native format and single-page black and white TIFF format, which TIFF files will include Bates numbers." (*Id.* at 4.) The parties also agreed to "provide a standard Concordance load file: .DAT file, .OPT/.LOG file (which shall indicate document breaks), Image Folder and Source Folder and separate .TXT files for the OCR or extracted full text (one text file per document)." (*Id.*) The plan did not discuss the cost of discovery.

Security argues that the amounts it seeks fall within § 1920(4) as "exemplification" or "costs of making copies." As discussed above, courts have no authority to award costs other than those set out in § 1920. Thus, the court cannot award amounts that are not properly "exemplification" or "making copies" as those terms have been interpreted as a matter of law, even if Security has rolled those amounts into a request for 10 cents per page.

What expenses of producing ESI are "exemplification" or "making copies"? In 2009, the Seventh Circuit affirmed a decision to allow a prevailing party to recover "costs for converting computer data into a readable format in response to [a] discovery request." *Heckler v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). That decision did not, however, discuss what processes were involved, and the Seventh Circuit has not subsequently determined whether § 1920(4) allows for recovery of other services involved in processing ESI. *See Chi. Bd. Options Exch., Inc.*, 2014 WL 125937 at *8 (noting the open question). Thus, the court looks to decisions from other circuit courts and district courts in this circuit. *Id.*

In light of the substantial amounts for document production that have been sought as costs under § 1920, a number of other circuit courts have recently addressed this issue. *See CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1328 (Fed. Cir. 2013); *Country Vintner of North*

*Carolina, LLC v. E. & J. Gallo Winery, Inc.,* 718 F.3d 249, 261 (4th Cir. 2013); *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 171 (3d Cir. 2012).

As to "exemplification," although Security has argued that all of the ESI processing constitutes "exemplification" (Security Add'l Bill of Costs Subm. at 1), it cites no authority that would support that characterization, which has been rejected by other courts. *See Country Vintner*, 718 F. 3d at 262; *Race Tires*, 674 F.3d at 166. As the Third Circuit observed, although some circuits interpret "exemplification" more broadly than others (compare *Cefaulu v. Village of Elk Grove*, 211 F.3d 416, 427-28 (7th Cir. 2000) (allowing cost of multimedia system to display exhibits to the jury) with *Kohus v. Toys R Us, Inc.*, 282 F.3d 1355, 1358-59 (Fed. Cir. 2002) (disallowing cost for video exhibit)), neither interpretation would extend to work done to process e-discovery which "did not produce illustrative evidence or the authentication of public records," and thus did not qualify as fees for "exemplification." *Race Tires*, 674 F.3d at 162; *see also Country Vintner*, 718 F.3d at 262 (same).

As to "making copies," the Third and Fourth Circuits concluded that "making copies" under § 1920(4) does not include any processing of ESI beyond converting computer data into a readable format (such as TIFF or PDF) and transferring the documents onto deliverable media; those courts rejected costs for preserving and collecting ESI, processing ESI, keyword searching, searching and extracting data, and culling privileged material. *Country Vintner*, 718 F.3d at 261; *Race Tires,* 674 F.3d at 161-62, 171. As the Third Circuit explained, even if "extensive 'processing' of ESI is essential to make a comprehensive and intelligible production . . . . that does not mean that the services leading up to the actual production constitute 'making copies.'" *Race Tires,* 674 F.3d at 169.

The Fourth Circuit additionally emphasized the Supreme Court's narrow reading of § 1920 in its *Taniguchi* decision. *Country Vintner,* 718 F.3d at 259, 261. In *Taniguchi*, the Court held that document translation is not recoverable under § 1920 as "compensation of interpreters." 132 S. Ct. at 2000. In doing so, the Court explained that taxation of costs "often is merely a clerical matter" because recoverable costs "are limited to relatively minor, incidental expenses" and "a fraction of the nontaxable expenses borne by litigants." *Id.* at 2006. Similarly, the Fourth Circuit reasoned, the fact that the prevailing party "will recover only a fraction of its litigation costs under our approach does not establish that our reading of the statute is too grudging in an age of unforeseen innovations in litigation-support technology." *Country Vintner,* 718 F.3d at 261; *see also Massuda v. Panda Express, Inc.*, No. 12 CV 9683, 2014 WL 148723 at *6 (N.D. Ill. Jan. 15, 2014) (citing *Taniguchi* in support of refusing the costs of processing ESI).

In *CBT Flint Partners*, the Federal Circuit agreed with the Third and Fourth Circuits except on one point: It concluded that parties could recover for "the stage-one costs of imaging source media and extracting documents in a way that preserves metadata." 737 F.3d at 1333. Security has neither cited *CBT Flint Partners* nor explained if its requested costs are the same as those allowed in that decision.

In this circuit, a majority of courts have adopted reasoning similar to *Race Tires* and *Country Vintner* to deny recovery of the costs for services—such as data loading, data processing, de-duplication, and culling—used in preparing ESI for conversion into a readable file format. *See Massuda,* 2014 WL 148723 at *6 (refusing costs of uploading and hosting documents on management service); *Chi. Bd. Options Exch., Inc.*, 2014 WL 125937 at *9 (refusing costs of "creating a litigation database, electric data hosting or other steps (such as analyzing metadata or

deduplication) leading up to making copies of materials") (internal quotations omitted); *Phillips v. WellPoint Inc.*, No. 3:10-cv-00357, 2013 WL 2147560 at *4 (S.D. Ill. May 16, 2013) (refusing costs of "logical document determination" and extraction of metadata); *Johnson v. Allstate Ins. Co.*, No. 07 C 781, 2012 WL 4936598 at *5-6 (S.D. Ill. Oct. 16, 2012) (refusing costs of processing ESI and extracting metadata). Security has not attempted to distinguish those decisions from its request for costs in this case. Thus, in line with the prevailing approach in this circuit and among appellate courts, the court denies Security's request for the costs of preparing electronic data to be converted to TIFF format, although, as discussed below, Security's request for the cost of TIFF conversion itself will be granted. Security may not recover the $117,755.58 incurred for data loading, data processing, and de-duplication and culling.

There is less uniformity about whether OCR costs are recoverable. Most recently, in *Chicago Board Options Exchange*, the court allowed recovery of "conversion costs and associated costs," including "making files readable through optical character recognition." 2014 WL 125937 at *9; *see also Johnson*, 2012 WL 4936598 at *6 (awarding costs of "rendering of ESI into a word searchable format"). In contrast, however, the court in *Allen v. City of Chicago*, No. 09 C 243, 2013 WL 1966363 at *5-6 (N.D. Ill. May 10, 2013), refused to award costs for OCR, concluding that the prevailing party had not shown that the process was reasonably necessary under § 1920(4). The court also reasoned that the process of making a file searchable is akin to the work an attorney or paralegal would perform in reviewing documents for relevant information—an activity for which costs are not recoverable under § 1920. *Id.* at *5; *see Windy City Innovations, LLC v. Am. Online, Inc.*, No. 04 C 4240, 2006 WL 2224057 at *3 (N.D. Ill. July 31, 2006). The Fourth Circuit in

*Country Vintner* also denied costs for OCR. 718 F.3d at 252, 261.[5]

Security has not shown that OCR was a necessary part of "making copies" in this case. When OCR costs have been awarded in this district, they have been treated as part of the costs—recoverable under *Heckler*—of converting the document into a readable format. *See Chi. Bd. Options Exch., Inc.*, 2014 WL 125937 at *9 (awarding costs for "making file readable through [OCR]"); *Johnson*, 2012 WL 4936598 at *6 (stating that *Heckler* allowed recovery of costs for the "specific purpose" of "making ESI word searchable"); *Comrie v. IPSCO Inc.*, No. 08 CV 3060, 2010 WL 5014380 at *3-4 (N.D. Ill. Dec. 1, 2010) (explaining that OCR costs have been permitted if the documents were "OCR'd in lieu of production of hard copies"); *Business Sys. Engineering, Inc. v. Intl. Business Machines Corp.*, 249 F.R.D. 313, 315 (N.D. Ill. 2008) (same). But "readable" does not necessarily mean "searchable." When electronic information is converted into a readable "static" format, like PDF and TIFF, sometimes an additional step, like OCR, is needed to make the document text searchable. *See* The Sedona Conference, The Sedona Conference Glossary: E-Discovery & Digital Information Management 35, 37 (Sherry B. Harris et al. eds., 3d ed. 2010) (defining "native format" and OCR). That procedure appears to be what happened here: According to the invoices in the record, Security paid separately for an outside vendor to perform the distinct tasks of "Tiff Conversion" and "OCR," and was billed separate amounts for those two processes. (Def.'s Bill of

---

[5] *Race Tires* also can be read as denying OCR costs because OCR costs were specifically requested separate from the cost of "scanning and TIFF conversion," and yet the court concluded that "only the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD involved 'copying.'" 674 F.3d at 161-62, 171. Some courts, however, seem to read *Race Tires* as including OCR as part of the process of "conversion of native files to TIFF" because the Third Circuit did not, in the end, explicitly reject the request for OCR costs. *See, e.g., Chi. Bd. Options Exch., Inc.*, 2014 WL 125937 at *9 (citing *Race Tires* in support of awarding OCR costs).

Costs, Ex. A at 50.) Because of that breakdown of costs, the court is able to award costs for converting ESI into a readable format, which is the equivalent of "making copies" under § 1920(4), while denying costs for making that document searchable, which is the equivalent of work counsel would perform in the absence of OCR. *See Allen*, 2013 WL 1966363 at *5-6; *Windy City*, 2006 WL 2224057 at *3. Because Security has not shown why OCR was necessary to the production of documents in this case, its request for $11,602.53 in costs for OCR processing is denied.

Security is, however, entitled to recover the requested amount of $16,793.97 for the four remaining categories of expenses. First, as noted above, Life Plans does not dispute that Security's costs to create hard copies are recoverable under § 1920(4). Second, in line with *Heckler*, *Race Tires*, and *Country Vintner*, Security may recover its expenses for converting electronic data into TIFF format. Third, bates labeling of documents produced to opposing counsel was agreed on by the parties and is generally considered a necessary and taxable expense in this district. *See Chi. Bd. Options Exch., Inc., LLC*, 2014 WL 125937 at *9; *DSM Desotech, Inc. v. 3D Systems Corp.*, No. 08 cv 1531, 2013 WL 3168730 at *2 (N.D. Ill. June 20, 2013); *Nilssen v. Osram Sylvania, Inc.*, No. 01 C 3585, 2007 WL 257711 at *6 (N.D. Ill. Jan. 23, 2007). Fourth, the court is persuaded that it was necessary for Security to create deliverable media to transfer the document production to Life Plans. *See Country Vintner*, 718 F.3d at 261 (allowing costs of transferring files to CDs); *Chi. Bd. Options Exch., Inc.*, 2014 WL 125937 at *9 (same); *but see Allen*, 2013 WL 1966363 at *6 (denying the costs of producing a master DVD when party failed to show that expense was reasonably necessary). Thus, Life Plans's objections to the Schedule D costs are granted in part and denied in part, and Security is entitled to recover $16,739.97 for document-production expenses.

As a final observation, this case highlights the importance of parties focusing early in the case

on the cost of e-discovery, especially in light of decisions reading § 1920 to exclude certain e-discovery processes from the scope of costs in that section. The parties here agreed to produce ESI in TIFF format and to provide a standard type of "load file," but they did not agree to share the cost or use a particular vendor for processing ESI. On similar facts, the Third Circuit in *Race Tires* distinguished a situation where the parties agreed to share the costs of creating "a specific document review database by a specific vendor for document production purposes" from the situation here, as in *Race Tires*, where the parties agreed to produce files in TIFF format but "retained their own electronic discovery consultants." *Race Tires,* 674 F.3d at 171 n. 11 (distinguishing *Synopsys, Inc. v. Ricoh Co. (In re Ricoh Co. Patent Litigation)*, 661 F.3d 1361, 1365 (Fed. Cir. 2011)). Here, there was ample warning that discovery in this lawsuit would be expensive. Even at a very early stage, Life Plans had identified approximately 170 people with information about the issues in this case and had proposed taking at least 25 depositions. (Disc. Plan and Initial Status Report at 3.) Although Rule 26(f) does not require parties to address the cost of processing ESI in their discovery plan, the parties are well advised to follow the Sedona Conference's best practices and discuss the burden of producing ESI and the possibility of cost sharing at the "meet and confer" conference. *See* Sedona Conference Commentary on Non–Party Production & Rule 45 Subpoenas, 9 Sedona Conf. J. 197, 201 (2008).

**Conclusion**

For the reasons stated, Life Plans's objections are granted in part and denied in part. Security is entitled to costs in the amount of $34,876.50 ($350.00 for filing fees + $125.00 for process server fees + $17,338.73 for deposition transcripts + $322.80 for copies of court filings +

$16,739.97 for document-production expenses).

                                                                               _____
                                                                               Geraldine Soat Brown
                                                                               United States Magistrate Judge

June 25, 2014