## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Life Plans, Inc., ) | |
|     Plaintiff, ) | |
| ) | Case No: 11 C 8449 |
| v. ) | |
| ) | Judge Ronald Guzmán |
| Security Life of Denver Insurance ) | |
| Company, et al., ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants seek to substitute the testimony of their previous expert, Roland Baker, and submit a new joint expert report from C. Timothy Morris and their other expert, Alexander Farley, in light of the unexpected death of Mr. Baker. Plaintiff opposes the motion. For the reasons stated herein, the motion for leave to substitute [146] is granted. Status set for May 18, 2016 at 9:30 a.m.

## STATEMENT

Defendants' two original experts, Mr. Baker and Mr. Farley, co-authored and signed a single report dated December 21, 2012. Without relying on any expert reports, this Court granted Defendants' motion for summary judgment on the ground that it had terminated the relevant Joint Cooperation Agreement ("JCA"), regarding the development of a new insurance product, pursuant to its terms. After the Seventh Circuit disagreed with this Court's conclusion and remanded the case in August 2015, Mr. Baker passed away in September 2015. Defendants now seek to offer the new joint report co-authored by of Mr. Farley and Mr. Morris dated March 16, 2016.

As noted by another court:

> In determining whether to allow a substitute expert, courts have frequently relied on Federal Rule of Civil Procedure 16(b), and treated the request for a substitute expert as a *de facto* attempt to alter the scheduling order and enlarge the discovery period. Under Rule 16, the court may modify a scheduling order if the party seeking modification shows good cause-that is, despite that party's diligence, the time table could not reasonably have been met.

*Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 1:04-CV-396, 2010 WL 3892860, at *2 (N.D. Ind. Sept. 30, 2010) (internal citations omitted).

Further,

> [a]lthough the substitute expert's testimony and report are generally restricted to the same subject matter as the prior expert, the substitute is not normally required to simply adopt the prior expert's conclusions verbatim—in effect, doing little more than authenticating and confirming the prior expert's conclusions. Rather, the substitute expert "should have the opportunity to express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform."

*Id*. (citations omitted).

Having reviewed the parties' submissions and Defendants' detailed reply setting forth the differences, the Court concludes that substitution is appropriate. As an initial matter, this is not a situation in which Defendants were somehow dissatisfied with Mr. Baker and thus are seeking to submit a "new and better" report; rather, Mr. Baker passed away. While it is true that Mr. Baker and Mr. Farley co-authored the original report and Mr. Farley is still available to testify, it is understandable that Defendants would like to have both authors available to testify given the complexity of the issues involved and the amount of damages Plaintiff is seeking, which is over $20 million.

Plaintiff's assertion that the proposed new report is a "wholesale re-write" of the first report is not well-taken. A review of a comparison of the two reports provided by Plaintiff, (Pl.'s Ex. B, Dkt. # 147-2), shows certain differences; however, these differences do not require denying Defendants their right to present the expert of their choice. Obviously, Mr. Morris has substituted his background and qualifications for those of Mr. Baker, but that is to be expected and does not go to the substance of the opinions.

Plaintiff further refers to approximately 18 paragraphs of the Morris/Farley report that it argues are brand new and contain new facts, theories, and opinions about enterprise risk management ("ERM") "that were never previously disclosed." (Pl.'s Resp., Dkt. # 147, at 7.) Plaintiff notes that Defendants' Rule 26(a)(1) disclosures made repeated references to PARP, which Defendants claimed was their approval process that Plaintiff's proposed Peak insurance policy had to meet before being accepted by Defendants. Indeed, the Seventh Circuit noted that the parties had "presented conflicting evidence over (A) what the Product Review and Approval Process [*i.e.*, PRAP, a term used in the JCA][1] required, (b) whether that was a reference to PARP [Defendants' internal product review process], (c) what PARP is, and (d) whether the Peak policy received whatever approval was required by the [JCA]." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co*., 800 F.3d 343, 354 (7th Cir. 2015). Plaintiff asserts that Defendants are now "shifting positions" by avoiding a discussion of PARP and "through their new expert report, [contend] that it was the enterprise risk management ("ERM") policy at ING/SLD that required the termination of the JCA." (Pl.'s Resp., Dkt. # 147, at 7.) But, as Defendants note, "PARP is an acronym for Defendants' ERM review process," both Mr. Baker and Mr. Morris were disclosed as ERM experts, and Mr. Baker was deposed about PARP and ERM.

---

[1] The Court notes that while "PARP" is a term used internally by Defendants, the JCA refers to "PRAP."

With respect to the new documents relied upon by Mr. Morris, Defendants note these are seven industry documents that support Mr. Morris' testimony. Plaintiff will have the opportunity to depose Mr. Morris about these documents and assess their impact on his testimony. The new opinions Plaintiff identifies are either minimal or not new.

The Court agrees that Defendants should have notified Plaintiff of Mr. Baker's death much sooner than they did. As noted, Mr. Baker passed away on September 25, 2015, but Defendants did not notify Plaintiff of his death and the existence of the new report until March 17, 2016. Defendants contend that they needed time to find a new expert, allow him to review the relevant material, and determine whether he would reach the same conclusions. Regardless, they should have at least notified both Plaintiff and the Court of this major development, particularly because they knew at the time of Mr. Baker's death that the case had been remanded by the Seventh Circuit and would be going to trial, which is set for August 8, 2016. Adjustments in the pretrial and trial schedule are more easily addressed ten months before trial instead of four. Nevertheless, the Court finds no basis on which to conclude that Defendants proceeded in bad faith.

For these reasons, the Court grants Defendants' motion to substitute Mr. Morris for Mr. Baker. Plaintiff is directed to, within 14 days of the date of this order (or earlier if possible), serve the new discovery requests on Defendants, who shall respond to the requests in 14 days. No later than June 3, 2016, the parties shall confirm a date for Mr. Morris' deposition, and Defendants are directed to make every effort to reasonably accommodate Plaintiff's schedule. While the Court does not anticipate any discovery disputes, any issues are to be raised immediately (*i.e.*, within 24 hours of determining that a dispute or issue exists) with the other party via telephone or face-to-face meeting. If a dispute cannot be resolved during that conversation or meeting, the parties shall file a motion with the Court within 24 hours of the meet and confer.

The Court will address any cost-shifting requests after discovery relating to the new expert report has been completed.

**Date**: May 5, 2016

**Ronald A. Guzmán**
**United States District Judge**