IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFE PLANS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SECURITY LIFE OF DENVER INSURANCE COMPANY and ING U.S., INC. n/k/a VOYA FINANCIAL, INC.,<br><br>    Defendants. | No. 11-cv-8449<br><br>Honorable Ronald A. Guzman |
| LIFE PLANS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>ING U.S., INC. n/k/a VOYA FINANCIAL, INC.,<br><br>    Defendant. | Consolidated with:<br><br>Case No. 13-cv-7864 |

**DEFENDANT SECURITY LIFE OF DENVER INSURANCE COMPANY'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant Security Life of Denver Insurance Company ("SLD"), by its attorneys, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, for its Motion for Directed Verdict, states as follows:

**I.  Introduction**

LPI has sued SLD for breach of the Joint Cooperation Agreement ("JCA") and breach of the implied covenant of good faith and fair dealing. SLD has asserted LPI's failure to mitigate as

an affirmative defense. No reasonable jury would have a legally sufficient basis to find for LPI, for the following reasons:

(1) SLD did not breach the JCA:

    (a) A condition precedent to SLD's obligation to offer Peak was not met, and

    (b) SLD had a right to terminate the JCA.

(2) LPI has not proven its own performance under the JCA.

(3) SLD did not breach any covenant of good faith and fair dealing.

(4) LPI cannot recover lost profits.

(5) LPI has not proven trailing commissions.

(6) LPI can recover nominal damages at most.

(7) LPI failed to mitigate.

## II. Standards

Under Federal Rule of Civil Procedure 50, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party[] and grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." FED. R. CIV. P. 50. The standard for deciding a motion for directed verdict is well-settled:

> [The Court] must determine whether the evidence presented at trial, when viewed in the light most favorable to the non-moving party and combined with all reasonable inferences that might be drawn therefrom, provides a sufficient probative basis for a verdict free from speculation over claims which are legally unfounded.

*North v. Madison Area Association*, 844 F.2d 401, 402 (7th Cir. 1988) (citing cases). Additionally:

A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon which whom the onus of proof is imposed.

*Id.* (citing *Gunning v. Cooley*, 281 U.S. 90, 94 (1930)).

**III.** **No Reasonable Jury Could Find for LPI on Its Claims for Breach of the JCA or Breach of the Implied Covenant of Good Faith and Fair Dealing**

    **A.** **SLD Did Not Breach the JCA**

        **1.** <u>A Condition Precedent Was Not Met</u>

"[A] condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Weiss v. Northwest Broad. Inc.*, 140 F. Supp. 2d 336, 343 (D. Del. 2001). "The non-occurrence of a condition will prevent the existence of a duty in the other party." *Id.* at 346; *see also Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1198 (Del. 1992).

The JCA has six conditions precedent. [Trial Ex. 48.] One of them was review and approval of Peak (which was to be administered under the Arbitrage Life Payment System [*id.*; testimony of Pamela Simon]) under SLD's product review and approval process, also known as PARP. [Trial Exs. 13 (SLD), 14 (SLD), 15 (SLD), 21 (SLD), 24 (SLD), 25 (SLD), 27 (SLD), 30 (SLD), 48, 73 (SLD), 754 and 756; testimony of Gary Jenkins, Butch Britton, Prakash Shimpi, Alain Karaoglan, Craig Umphress, Pamela Simon ("at the ING level they had something called PARP that they had to get approved or they had to get off their checklists"), Adam Simon and David Simon.] Peak was not approved under SLD's product review and approval process. [Trial Exs. 15, 19, 20, 30 and 35; testimony of Butch Britton, Francis de Regnacourt, Prakash Shimpi, Rodney Martin, Rob Leary and Alain Karaoglan.]

.

## 2. SLD Had a Right to Terminate the JCA

Termination clauses in contracts are routinely enforced under Delaware law. *See*, *e.g.*, *Ferentinos v. Firstate Mort. Corp.*, Case No. 89C-AP-40, 1991 WL 18102 (Del. Super. Ct. Feb. 1, 1991); *Metzker v. Int'l Paper Co.*, 825 F. Supp. 641, 647 (D. Del. 1993); *Empire Fin. Servs. v. Bank of NY*, No. Civ. A. 99C-01-207SCD, 2003 WL 22701442, at *2 (Del. Super. Ct. Nov. 13, 2003); *Harvey & Knotts, Inc. v. New Castle-Gunning Bedford Sch. Dist.*, No. 1059 CIV. A. 1974, 1975 WL 168659, at *2 (Del. Super. Ct. Dec. 9, 1975). When it is within a party's absolute right to terminate a contract, a claim for breach of contract cannot be sustained. *Empire Fin. Servs.*, 2003 WL 22701442, at *2 ("It matters not that the relationship with the agency had been good, or that the recall was unprecedented; it was within the absolute control of the Bank to terminate the contract and exercising such a provision cannot support a cause of action").

SLD terminated the JCA on October 17, 2011, via written notice to LPI in accordance with JCA § 8(i). [Court' ruling on Defendants' Motion *in Limine* No. 11; Trial Ex. 35 (SLD); testimony of Gary Jenkins and Pamela Simon.] Either party had a right to terminate the JCA. [Trial Ex. 48; trial testimony of Pamela Simon (acknowledging right to terminate based upon comparable language in parties' General Agent Agreement (Trial Ex. 339)), Butch Britton and Gary Jenkins.]

Neither party's right of termination was conditioned on SLD's prior acceptance of $300 million in premium for Peak policies. [*Id.*] The JCA places no limit on either party's right to terminate. *See Ferentinos,* 1991 WL 18102 at *5 ("Courts of this State are not permitted to change or ignore the language of a contract merely to avoid hardships or to meet special circumstances against which the parties have not protected themselves."). Section 1(a) of the JCA states SLD's commitment to accept $300 million in premium over three years, but that

4

commitment was subject to the "terms" of the JCA. [Trial Ex. 48.] One such term is JCA § 8(i). [*Id.*; testimony of Adam Simon.]

Where there is uncertainty or ambiguity in the meaning of contract language, evidence outside of the contract can be considered. *Eagle Indus., Inc. v. DeBilbill Health Care, Inc.*, 702 A.2d 1228, 1232–33 (Del. 1997). SLD rejected LPI's drafts of the JCA which stated, "The term of this Agreement shall be for an indefinite period, but shall not be terminable prior to the fulfillment of [SLD's] $300 million A.L.P.S. premium commitment." [Trial Exs. 4 (SLD) and 36 (SLD); testimony of Adam Simon and Gary Jenkins.] LPI never requested that LPI's proposed termination language be added to the JCA. [Trial Exs. 37 (SLD), 38 (SLD), 39 (SLD), 40 (SLD), 41 (SLD), 42 (SLD), 43 (SLD) and 44 (SLD); testimony of Adam Simon.]

SLD's only obligation upon termination was to "complete processing of any applications received prior to notice of termination." [Trial Ex. 48.] As of that date, the only formal applications SLD had received in good order from LPI were for products other than Peak. [Trial Exs. 26 (SLD) and 30 (SLD); trial testimony of Pamela Simon, Craig Umphress, Gary Jenkins, Adam Lubrano, and Amy Stip.] Those applications were approved, where appropriate, and policies have issued and commissions paid to LPI. [Testimony of Pamela Simon.]

  **B. LPI Has Not Proven Its Own Performance Under the JCA**

LPI was responsible for finding financing for potential Peak policies. [Testimony of Pamela Simon.] LPI did not do so. Only one lender offered some financing (up to $25 million), but to STP Enterprises, not LPI. [Trial Ex. 435; testimony of Pamela Simon and Adam Simon.] STP Enteprises and LPI are separate and distinct legal entities. [Testimony of Pamela Simon and Adam Simon.] Another lender sent a proposal (also to STP Enterprises, not LPI) but the conditions of that proposal were not met. [Trial Ex. 45 (SLD); testimony of Pamela Simon.]

5

### C. SLD Did Not Breach Any Covenant of Good Faith and Fair Dealing

#### 1. The Implied Covenant of Good Faith and Fair Dealing Cannot Override the Express Provisions of the JCA

The covenant is "a judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses *oppressive or underhanded tactics* to deny the other side the fruits of the parties' bargain." *Forsythe v. Black Hills Corp.*, No. 04 C 5361, 2008 WL 373177, at *12 (N.D. Ill. Feb. 8, 2008) (applying Delaware law; granting summary judgment where merger agreement expressly prohibited certain activity, thus precluding plaintiff's reliance on implied covenant) (emphasis added). "Delaware law commands that courts resort to implying contractual terms under this duty only rarely, in cases that 'turn[ ] on issues of compelling fairness.'" *Id.*; *see also Capano Homes, Inc. v. Syed*, No. 07C-07-004 JAP, 2008 WL 4182039, at *3 (Del. Super. Ct. Sept. 8, 2008) ("[T]he courts of this state have been reluctant to impose obligations under that implied covenant."); *Wilmington & N. R.R. Co. v. Del. Valley Railamerica, Inc.*, No. 97C-09-297-WTQ, 1999 WL 463705, at *6 (Del. Super. Ct. Mar. 30, 1999) ("[I]mplying obligations based on the covenant of good faith and fair dealing is a cautious enterprise.").

The purpose of the implied covenant "is to supply terms which the parties overlooked while negotiating an agreement," and "it is not the proper role of a court to rewrite an agreement under the guise of applying the implied covenant." *Capano Homes*, 2008 WL 4182039, at *3. "Crucially, the presence of an express term that governs the subject of the parties' dispute means that the implied covenant can have no bearing on the case." *Forsythe*, 2008 WL 373177, at *12. Thus, "the implied covenant only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract." *World Market Ctr. Venture, LLC v.*

*Nama Holdings, LLC*, No. 5131-VCL, 2010 WL 1756876, at *8 (Del. Ch. Apr. 30, 2010). The "legal test for implying contractual obligations is whether it is '*clear* from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of the implied covenant . . ." *Wilmington & N. R.R.*, 1999 WL 463705, at *6; s*ee also Bonanza Int'l, Inc. v. Rest. Mgmt. Consultants, Inc.*, 625 F. Supp. 1431, 1448 (E.D. La. 1986) ("[I]t appears that defendants are attempting to override the termination provisions . . . through the use of the implied obligation of good faith and fair dealing. The jurisprudence is clear that implied covenants cannot override express contractual provisions. . . These termination provisions cannot be 'read out of the contract' . . ."); *Dunn v. Signorelli*, No. 3:10-CV-1037 (RNC), 2012 WL 4512564, at *2 (D. Conn. Sept. 30, 2012) (requirement of good faith/fair dealing cannot be applied to limit parties' termination rights).

Based on the evidence at trial, there is no relevant term of the JCA the parties overlooked. The JCA contains the parties' full agreement. LPI failed to prove anything manipulative about SLD's conduct. SLD did not refuse to provide LPI with any information requested by LPI. [Testimony of Pamela Simon.] Nor did LPI prove that SLD gained anything to the disadvantage of LPI. No Peak policy was sold, and no premium was paid to SLD. [Testimony of Pamela Simon.] If LPI wanted to condition SLD's right of termination on SLD's acceptance of any particular amount of premium, it knew precisely how to do so, as shown by the language LPI proposed in its draft of the JCA. The JCA plainly required review and approval of Peak under SLD's product review and approval process. Accordingly, there are no obligations to "imply," since each of the bases for LPI's "covenant of good faith and fair dealing" claim is expressly provided for in the JCA. If the Court or a jury were to either (a) imply an obligation on the part of SLD to accept $300 million in Peak premium *before* SLD could terminate, or (b) excuse the

condition of PARP approval, this would directly "contradict . . . the purposes reflected in the express language of the contract" and thus violate Delaware law. *See World Market Ctr. Venture, LLC*, *supra*.

2. There Is No Evidence of Fraud, Deceit or Wrongful Intention

Where the covenant may apply, "the party allegedly breaching the contract must have acted in an 'arbitrary or unreasonable' manner and in 'bad faith.'" A finding that one acted in 'bad faith' requires a showing of wrongful intent." *Gallagher v. E.I. DuPont de Nemours & Co.*, No. 06C-12-188 WCC, 2010 WL 1854131, at *5 (Del. Super. Ct. Apr. 30, 2010); *see also Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1234 (Del. Ch. 2000) ("Violating the implied covenant of good faith and fair dealing implicitly indicates bad faith conduct."); *Layfield v. Beebe Med. Ctr., Inc.*, No. 95-C-12007, 1997 WL 817994, at *6 (Del. Super. Ct. Nov. 24, 1997) (party must provide facts showing intent to deceive).

"The term 'bad faith' is not simply bad judgment or negligence but rather implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." *Layfield*, 1997 WL 817994, at *6. Thus, "[t]he Delaware Supreme Court has explicitly held that a claimant must demonstrate that the conduct at issue involved fraud, deceit, or misrepresentation in order to prove a breach of the implied covenant." *Cont'l Ins.*, 750 A.2d at 1234.

A party's "exercise of its contractual right to terminate, without more, does not constitute a breach of its implied covenant of good faith and fair dealing." *Gilbert v. El Paso Co.*, 575 A.2d 1131, 1143 (Del. 1990). A party exercising contractual rights is further shielded from liability where the party has "plausible and reasonable explanations" for its actions. *Cont'l Ins.*, 750 A.2d at 1234; *see also First Fed. Sav. Bank v. CPM Energy Sys. Corp.*, 1993 WL 138986, at

*3-4 (Del. Super. Ct. Apr. 22, 1993) (finding bank had sufficient reasons to call loan, noting that "[w]here the conditions are expressed, as they were here, the motivations of [the bank] are, in the absence of fraud, of little relevance"); *Q.C. Onics Ventures, LP v. Johnson Controls, Inc.*, No. 1-03-CV-138-TS, 2006 WL 1722365, at *8-9 (N.D. Ind. June 21, 2006) ("[b]ecause the termination clause was bargained for in good faith, and the clause is expressly stated in the parties' contracts, the Defendant's exercise of its rights under the termination clauses could not be bad faith.").

Assuming, *arguendo*, the doctrine of good faith and fair dealing is applicable, no reasonable jury could find that SLD engaged in fraud or deceit or made misrepresentations. LPI offered no evidence of wrongful intent on SLD's part. SLD informed LPI of the need for review and approval of Peak under PARP. [Trial Exs. 13 (SLD), 14 (SLD), 15 (SLD), 21 (SLD), 24 (SLD), 25 (SLD), 27 (SLD), 30 (SLD), 48, 73 (SLD), 754 and 756; testimony of Gary Jenkins, Butch Britton, Craig Umphress, Pamela Simon ("at the ING level they had something called PARP that they had to get approved or they had to get off their checklists"), Adam Simon and David Simon.] SLD withheld no information from LPI. [Testimony of Pamela Simon.] SLD developed Peak with LPI and sought necessary approvals. [Testimony of Pamela Simon, Butch Britton, Scott Carney, Joe Fick, Francis de Regnacourt, and Prakash Shimpi.] Butch Britton advocated for Peak. [Testimony of Pamela Simon, Butch Britton, Francis de Regnacourt, Prakash Shimpi, Rodney Martin, Rob Leary and Alain Karaoglan.] Risk management personnel disagreed. [Testimony of Pamela Simon, Butch Britton, Francis de Regnacourt, Prakash Shimpi, Rodney Martin, Rob Leary and Alain Karaoglan.]

Finally, no reasonable jury could find that the product review and rejection was arbitrary or unreasonable. SLD risk personnel provided detailed reasons for their decisions. [Trial Ex. 20.]

There is no basis for the jury to substitute its judgment for the business judgment of these risk management professionals. *See, e.g.*, *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1217 (7th Cir. 1984).

**D. LPI Cannot Recover Lost Profits**

LPI is seeking lost profits as compensatory damages. The parties' General Agent Agreement controls with respect to compensation. [Trial Exs. 48 and 339.] The General Agent Agreement states, "The parties agree that under no circumstances will any party be liable to any other party for lost profits, or any special, indirect, consequential, treble, multiple or punitive damages of any kind, whether or not foreseeable, incurred by any other party in connection with this Agreement." [Trial Ex. 339.]

In addition, damages that are merely speculative are not recoverable. They must be proved with reasonable certainty and not left to conjecture or speculation. *Dahlink Fin. Corp. v. Bochniak*, 2012 Del. C.P. LEXIS 24, at *21 (Del. C.P. Mar. 13, 2012); *Scotton v. Wright*, 32 Del. 192, 204 (Del. Super. 1923); *Kirkpatrick v. Strosberg*, 385 Ill. App. 3d 119, 130 (2d Dist. 2008); *Bockman Printing & Servs., Inc. v. Baldwin-Gregg, Inc.*, 213 Ill. App. 3d 516, 527 (1st Dist. 1991). LPI has not proven damages. No reasonable jury could find that it did. LPI's principals' damages testimony was entirely unclear, conclusory and speculative. It was based upon historical performance of other ALPS programs, but that historical performance does not match the recovery that LPI is seeking in this case. [Trial Exs. 25, 759 and 760; testimony of Pamela Simon and David Simon.] LPI also ignores, where convenient, historical performance with respect to business expenses incurred in the administration of prior ALPS programs. [Trial Ex. 700 (SLD); testimony of Pamela Simon.] No reasonably jury could find, therefore, that LPI has proven lost net profits.

### E. LPI Has Not Proven Trailing Commission (In the Alternative)

Alternatively, LPI's trailing commission damages claim is speculative. LPI contends that 100% of original account values would have remained in force for 15 years, but the historical performance of the Arbitrage programs does not support this theory. [Trial Exs. 25, 759 and 760; testimony of Pamela Simon and David Simon.]

### F. LPI Can Recover Nominal Damages At Most (In the Alternative)

Because LPI did not procure financing (or adequate financing) for Peak policies, LPI cannot recovery anything but nominal damages. *USH Ventures v. Global Telesystems Grp., Inc.*, 796 A.2d 7, 23 (Del. Super. Ct. 2000) (nominal damages only where financing for transaction was required, but no financing in place).

### G. LPI Failed to Mitigate

Pamela Simon's testified to "near 100% certainty" that LPI could find both insureds and financing for the Arbitrage program as of October 2011 when SLD terminated the JCA. [Testimony of Pamela Simon.] Following the termination, LPI did not undertake reasonable efforts to find any insurance company to sell life insurance policies based upon the Arbitrage program. [Testimony of Pamela Simon.] LPI's damages, if any, thus should be reduced to zero.

## IV. Conclusion

SLD U.S. respectfully requests that the Court (a) grant its Motion for Judgment as a Matter of Law; (b) enter judgment in its favor on LPI's claim for breach of contract (First Amended Complaint, Count I); (c) enter judgment in its favor on LPI's claim for breach of the implied covenant of good faith and fair dealing (First Amended Complaint, Count II); and (d) award it any further relief which is appropriate and just.

Dated:  February 6, 2017                                  Respectfully submitted,

SECURITY LIFE OF DENVER INSURANCE COMPANY

By:     *s/ James V. Garvey*
       One of Their Attorneys

James V. Garvey, Bar No. 6224992
Nicole J. Highland, Bar No. 6291632
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500
F:  +1 312 609-5005

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **DEFENDANT SECURITY LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT AS A MATTER OF LAW** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all to counsel of record on February 6, 2017.

*s/ James V. Garvey*